### 9965. MILLER *v.* WALKER.

LUKE, J. 1. Where suit was brought for a sum alleged to be due upon a plain and unambiguous contract in writing, and the only evidence submitted by the defendant was to the effect that he was ignorant and could "just read and write a little bit," and did not read the contract, that the nature of the written contract was misrepresented to him and he thought that he was signing an entirely different contract from the one he did sign, but nothing was done to prevent him from reading it or having it read to him, it was not error for the trial judge to direct a verdict against him for the amount appearing to be due under the contract. *Sloan* v. *Farmers & Merchants Bank,* 20 *Ga. App.* 123 (92 S. E. 892), and cases cited; *Tinsley* v. *Gullett Gin Co.,* 21 *Ga. App.* 512 (2), 516 (94 S. E. 892).

2. The judge of the superior court did not err in overruling the certiorari. The question raised by the bill of exceptions in this case having been so often decided, both by the Supreme Court and this court, adversely to the position of the plaintiff in error, the statutory damages (Civil Code of 1910, § 6213) are awarded the defendant in error.

*Judgment affirmed, with damages. Wade, C. J., and Jenkins, J., concur.*

DECIDED JANUARY 15, 1919.

Certiorari; from Jones superior court—Judge Park. June 1, 1918.

Miller signed a contract for the purchase of certain land for $537, for which sum (except a cash payment of $3) it was provided therein that he should give certain promissory notes upon the tender and delivery of a deed conveying the property to him within ninety days. The deed was tendered and he was requested to sign the notes, within the time stated, but he refused to accept the deed or sign the notes, and suit for the amount stated in the written contract was brought against him in the city court of Gray by Walker, the other party to the contract. The foregoing facts appear from the allegations and admissions in the pleadings. The nature of the defense set up in the defendant's plea appears from his testimony, which was the only evidence introduced on the trial.

He testified: "I was at my home . . and was busy, and a man who said he was named Mr. R. C. Potts came up and said he was working for a Mr. Walker in Macon, and they wanted to sell me some lots. I told him I was very busy and didn't need any lots, . . that I was already involved and owed more than I could pay. . . . . He said it was a big thing, that some fine streets and parks would be there,—made beautiful pictures in talking. . . I told him I had a house and lot at Haddock, that if he would sell this for $1,000 I would give them a commission of $50 and would buy the lots, or some of them. . . We got in his automobile and went to Haddock, and he looked at the property and said he could sell it; then we went on towards Macon, out to see the lots. . . . I am ignorant, am not educated at all, can just read and write a little bit. They told me I could sign up, and I still told them I could not buy any lots, and would wait until they sold my house and lot, and then I would take them and pay for them. They did not read over the paper to me, nor did I ask them to read it, because they talked so fair; so it seemed to me then. They told me the paper was nothing but an option to buy if I wished, and did not bind me to anything if I did not want to buy, but if I would put up $3 and sign the option paper, then at the end of ninety days, if I decided to buy, I could, and that if I then decided I did not want the lots, I would only lose $3. I relied absolutely on what they told me, and the reason I signed the paper was because I thought I was signing an agreement whereby I could buy or not if I wanted to, but I never did think I was signing a paper like this one, and never knew it until about three months afterwards when they came out to my house and said they had a deed to the lots for me. . I never would have signed any such paper except they told me a different thing, that it wasn't a thing in the world but an option, at first. I did not read the paper when they told me to sign, for I thought they were telling me the truth about what it was. . They never sold my Haddock property, and I never heard that they tried to sell it. . . I am ignorant and have never been to school, and can't tell much about reading and writing." The court directed a verdict against the defendant; certiorari was sued out; the certiorari was overruled, and he excepted.

*R. N. Hardeman,* for plaintiff in error, cited: *Ga. R.* 69/362;

78/739; 91/821, 826; 96/120; 102/422 (2), 424; 104/312; 112/319; 133/56, 58; 136/584. *Ga. App.* 9/349; 10/362.

*J. R. L. Smith, B. J. Fowler,* contra, cited: *Ga. R.* 60/384; 94/400; 109/439; 112/319; 117/851; 119/8; 122/802; 127/735. *Ga. App. R.* 5/392; 20/123, 766; 21/512, 580, 634. On motion that damages be awarded for bringing up case: *Ga. R.* 51/554, 555; 109/196, 550, 553; 110/779; 68/65. *Ga. App. R.* 4/476; 8/409; 19/811; 20/97, 205, 529 (1); Civil Code (1910), § 6213.